[No. B200103. Second Dist., Div. Three. Aug. 1, 2008.]

HOWARD M. JAFFE, Plaintiff and Appellant, v.
ZENAIDA C. PACELLI, Defendant and Respondent.

**COUNSEL**

Jaffe & Martin, Howard M. Jaffe and Arthur L. Martin for Plaintiff and Appellant.

Aguiluz Law Corporation and Heroico M. Aguiluz for Defendant and Respondent.

**OPINION**

**ALDRICH, J.—**

## I.

## INTRODUCTION

In this case, the superior court entered a judgment against a debtor, Zenaida C. Pacelli (Pacelli), that included an award of attorney fees. Years later, Pacelli sought to discharge the debt in bankruptcy court. Pacelli's bankruptcy case was dismissed as a result of the efforts taken by the judgment creditor, appellant Howard M. Jaffe.

In this appeal, we hold that Jaffe's efforts taken in the bankruptcy court, and in related proceedings, were incurred to enforce the superior court judgment. Thus, Code of Civil Procedure section 685.040 (section 685.040)

entitles Jaffe to a postjudgment order awarding him compensation for the attorney fees and costs expended in those proceedings.

We reverse the trial court's postjudgment orders to the extent they denied Jaffe's request for attorney fees and costs related to Pacelli's bankruptcy proceedings and remand the case for further proceedings consistent with our holding. In all other respects, we affirm the postjudgment orders.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

This is the fourth appeal we have resolved involving this matter.[1]

A. *Preliminary facts and the three prior appeals*

Pacelli executed a promissory note with regard to the purchase of real property. The note included an attorney fees provision stating that if litigation was commenced "to collect this note or any portion thereof, such sum as the Court may deem reasonable shall be added hereto as attorney's fees." Pacelli defaulted on her obligations regarding the purchase of the property. On October 7, 1996, the Los Angeles Superior Court entered a default judgment in case No. NC016962 against Pacelli in the total amount of $458,621.83. It included an award of attorney fees and costs. On July 28, 1999, we filed an opinion (*Scott v. Cruz* (July 28, 1999, B120607) [nonpub. opn.]) affirming the trial court's order denying Pacelli's motion to set aside default and default judgment.[2]

By March 4, 2003, the judgment had grown to $900,660.99, with the accumulation of interest and costs. On that date, the superior court entered a renewed judgment against Pacelli.

Jaffe, as the judgment creditor, sought to enforce the judgment against Pacelli.[3] As part of the enforcement proceedings, Jaffe caused the Los Angeles County Sheriff to levy on funds deposited in a savings account at the Bank of America. Pacelli filed a claim of exemption asserting that the funds in the account were exempt from levy. In an opinion filed on November 10, 2005, in *Pacelli v. Jaffe* (Nov. 10, 2005, B170237) (nonpub. opn.), we

---

[1] On our own motion, we have taken judicial notice of our three prior opinions.

[2] The judgment was also entered against Edgar J. Cruz and Mila A. Cruz. However, their debt subsequently was discharged in bankruptcy.

[3] Jaffe acts as the judgment creditor in his role as the sole remaining trustee of the estate of Edward Vernon Hamilton.

affirmed the trial court's order denying Pacelli's claim of exemption. We also denied Jaffe's request for sanctions.

In another opinion filed on November 10, 2005, in *Aguiluz v. Jaffe* (Nov. 10, 2005, B172670) (nonpub. opn.), we affirmed two orders by the trial court imposing sanctions against Pacelli's counsel, Heroico M. Aguiluz.

### B. *Facts underlying the present appeal*

#### 1. *The filing of the fraudulent transfer act complaint*

On April 13, 2004, Jaffe filed in the Los Angeles Superior Court a complaint pursuant to the fraudulent transfer act (*Jaffe v. Pacelli* (Super. Ct. L.A. County, No. BC313713)). In the complaint and a subsequently filed first amended complaint, Jaffe sought to set aside multiple fraudulent transfers of real and personal property by Pacelli. Jaffe estimated that the properties transferred by Pacelli were worth millions of dollars.

#### 2. *The bankruptcy proceedings*

On August 13, 2004, Pacelli filed a petition for relief with the bankruptcy court seeking chapter 7. The renewed judgment in Los Angeles Superior Court case No. NC016962 was the only debt listed in the bankruptcy petition.

On November 16, 2004, Jaffe filed an adversary proceeding in the bankruptcy court seeking a determination that Pacelli was not entitled to have her debt discharged in bankruptcy. In April 2005, the bankruptcy court denied Pacelli's motion to dismiss the adversary proceeding because Pacelli had taken many steps to defraud creditors in an effort to avoid satisfying the outstanding judgment. These included fraudulently transferring numerous properties and concealing assets. The clerk of the bankruptcy court entered Pacelli's default in the adversary proceeding for her failure to answer the petition.

In November 2005, the bankruptcy court entered default judgment against Pacelli based upon the following findings: (1) Pacelli refused to obey the bankruptcy court's order directing her to answer the complaint; (2) Pacelli refused to participate in discovery; (3) Pacelli fraudulently transferred and concealed property with the intent to hinder, delay or defraud Jaffe; (4) Pacelli concealed and failed to keep or preserve books and records from which her financial condition could be ascertained; (5) Pacelli knowingly and fraudulently made a false oath or account; and (6) Pacelli failed to explain the total loss of assets to meet her liabilities. The bankruptcy court concluded that

Pacelli lacked entitlement to have her debts discharged in bankruptcy because, among other reasons, she "fraudulently transferred and/or concealed property within one year before the filing of her Petition with the intent to hinder, delay or defraud Jaffe as a creditor."

Pacelli filed three unsuccessful appeals with the district court and one with the Ninth Circuit Court of Appeals challenging the bankruptcy court's rulings.

On August 22, 2006, the bankruptcy court dismissed Pacelli's case and closed Jaffe's adversary proceeding, thereby vacating the automatic stay and permitting further proceedings in state courts.[4]

In forcing the dismissal of Pacelli's bankruptcy case, in defending the bankruptcy court's actions on appeal, and in pursuing the adversary proceeding (hereinafter collectively referred to as the bankruptcy proceedings), Jaffe stated that his attorneys had expended 987.1 hours having a lodestar value of $274,495, and that he had incurred expenses of $27,878.91.

### 3. *Further proceedings in Jaffe's fraudulent transfer action*

After the bankruptcy stay was lifted, Jaffe attempted to litigate the fraudulent transfer case (case No. BC313713) in the Los Angeles Superior Court. However, Pacelli refused to engage in discovery. In December 2006, the trial court overruled Pacelli's demurrer to the first amended complaint, ordered Pacelli to respond to discovery and to pay discovery sanctions, and ordered that the admissions contained in Jaffe's first request for admissions were deemed admitted. On February 13, 2007, the trial court struck Pacelli's answer as being both false and irrelevant.

On February 22, 2007, Pacelli appealed from the February 13, 2007, order. On April 9, 2007, we dismissed Pacelli's appeal as being taken from a nonappealable order.

### 4. *Jaffe's motions for attorney fees and expenses pursuant to section 685.040*

On March 12, 2007, Jaffe turned back to this case, the case in which the October 7, 1996, judgment had been obtained against Pacelli. The motion

---

[4] "A *dismissal* [of a bankruptcy petition], unless otherwise ordered, 'revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.' (11 U.S.C. § 349(b)(3).)" (*Circle Star Center Associates, L.P. v. Liberate Technologies* (2007) 147 Cal.App.4th 1203, 1209 [55 Cal.Rptr.3d 232] (*Circle Star Center*), italics added.) "In contrast, in the more usual scenario when a bankruptcy is *discharged* after the bankruptcy proceedings are completed, the debtor's debts are usually discharged and the proceeds of any nonexempt assets divided among creditors. [Citation.]" (*Id.* at p. 1209, fn. 6.)

was brought pursuant to section 685.040. Jaffe sought reasonable and necessary attorney fees and costs incurred by him from the time the judgment was renewed on March 4, 2003, through February 28, 2007. In the motion and a subsequently filed motion for reconsideration, Jaffe sought an award for the attorney fees and costs incurred by him for the efforts expended in (1) prosecuting the fraudulent transfer case (L.A. Super. Ct. case No. BC313713); (2) defending against Pacelli's three appeals in this court; and (3) participating in the bankruptcy proceedings, that included resisting, and eventually obtaining dismissal of, Pacelli's bankruptcy petition. Jaffe contended he was entitled to such an award because all efforts were reasonable and necessary costs of enforcing the October 7, 1996, judgment, which had been renewed in March 2003.

On April 24, 2007, the trial court heard and ruled on Jaffe's motion. On June 4, 2007, the trial court ruled on Jaffe's reconsideration motion. As a result of these two rulings, the trial court issued orders awarding Jaffe the total sum of $575,666.76 ($534,571.25 for attorney fees and $41,095.51 for expenses) incurred in (1) prosecuting the fraudulent transfer action and (2) defending against the three appeals in this court. However, the trial court *denied* Jaffe's request for an award of attorney fees and costs for those efforts expended in the bankruptcy proceedings.

In issuing the April 24, 2007, and June 4, 2007, orders, the trial court stated that it had denied Jaffe's request with regard to the expenditures incurred in the bankruptcy proceedings because, "bankruptcy, that's [an] entirely different proceeding. It's not necessary for defending the judgment; it's a process whereby the debtor seeks relief from a judgment." Or as stated differently by the trial court, "opposition to the bankruptcy petition is not a reasonable cost. It's not directly defending the judgment." The trial court also stated, it "[s]eems to me that if the bankruptcy court found the matter frivolous, they could have awarded fees in the bankruptcy court."

On July 13, 2007, the trial court filed an order reflecting the amount of the awards and denying Jaffe's request for an award with regard to those expenses incurred by him in the bankruptcy proceedings.

Jaffe timely appealed from the April 24, 2007, June 4, 2007, and July 13, 2007, orders. Jaffe challenges only those parts of these postjudgment orders that denied his request for an award of attorney fees and expenses incurred in the bankruptcy proceedings. Pacelli has not appeared on appeal. We reverse

those parts of the orders addressed by Jaffe in this appeal. In all other respects we affirm the orders.[5]

## III.

## DISCUSSION

Jaffe raises one contention in this appeal. He contends that pursuant to section 685.040 he is entitled to an award of attorney fees and costs for the efforts he expended in combating Pacelli's bankruptcy attempt. We agree.

### A. *Standard of review*

The usual standard of review for an award of attorney fees is abuse of discretion. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1176 [39 Cal.Rptr.3d 788, 129 P.3d 1]; *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142 [118 Cal.Rptr.2d 569]; *Olson v. Cohen* (2003) 106 Cal.App.4th 1209, 1213 [131 Cal.Rptr.2d 620].) Here, however, the issue is whether the trial court had the *authority* pursuant to section 685.040 to issue such an award for efforts Jaffe expended in the bankruptcy proceedings. This is a legal issue, which we review de novo. (*Connerly,* at p. 1176; *Carver,* at p. 142; *Olson,* at p. 1213.)

### B. *Discussion*

■   Generally, when a judgment is rendered in a case involving a contract that includes an attorney fees and costs provision, the "judgment extinguishes all further contractual rights, including the contractual attorney fees clause. [Citation.] Thus in the absence of express statutory authorization, . . . postjudgment attorney fees cannot be recovered." (*Berti v. Santa Barbara Beach Properties* (2006) 145 Cal.App.4th 70, 77 [51 Cal.Rptr.3d 364] (*Berti*).) However, "[f]ees authorized by statute do not present the same problem. A judgment does not act as a merger and a bar to statutory fees. [Citation.]" (*Ibid.*)

Section 685.040 is intended to address the "problem unique to a claim for postjudgment fees in actions based on contract." (*Berti, supra,* 145 Cal.App.4th at p. 77.) Section 685.040 is part of the Enforcements of Judgments Law (EJL; Code Civ. Proc., § 680.010 et seq.).

---

[5] Orders denying postjudgment motions for an award of attorney fees and expenses incurred in enforcing a judgment and a renewed judgment are appealable. (Code Civ. Proc., § 904.1, subd. (a)(2); *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 648, 656 [25 Cal.Rptr.2d 109, 863 P.2d 179].)

The former version of section 685.040 provided that attorney fees were not collectible as costs of enforcing a judgment and the prevailing party could not collect attorney fees incurred in postjudgment enforcement efforts. (*Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 556 [39 Cal.Rptr.2d 432]; see *Chelios v. Kaye* (1990) 219 Cal.App.3d 75, 80 [268 Cal.Rptr. 38]; *Hambrose Reserve, Ltd. v. Faitz* (1992) 9 Cal.App.4th 129, 132 [11 Cal.Rptr.2d 638], disapproved on other grounds in *Trope v. Katz* (1995) 11 Cal.4th 274, 292 [45 Cal.Rptr.2d 241, 902 P.2d 259].) In 1992, the Legislature amended section 685.040 to provide that *if* the underlying judgment included an award of contractually based attorney fees, the party seeking to enforce the judgment may obtain posttrial attorney fees incurred to enforce the judgment. (Stats. 1992, ch. 1348, § 3, p. 6707; *Miller v. Givens* (1994) 30 Cal.App.4th 18, 21 [37 Cal.Rptr.2d 1].) Pursuant to the current version of the statute, the award of postjudgment attorney fees is not based on the survival of the contract, but is instead based on the award of attorney fees and costs in the trial judgment. (*Imperial Bank v. Pim Electric, Inc., supra,* at pp. 557–558 & fn. 13.) This is in accord with the extinction by merger analysis providing that postjudgment rights are governed by the rights in the judgment and not by any rights arising from the contract. (*Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1766, 1770 [31 Cal.Rptr.2d 224].)

The last sentence of section 685.040 provides the authorization for trial courts to award postjudgment attorney fees as costs according to the following criteria: "Attorney's fees incurred in enforcing a judgment are included as costs collectible . . . if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5."[6]

Thus, there are two requirements before a motion for an award of postjudgment attorney fees may be awarded as costs: (1) the fees must have been incurred to "enforce" a judgment; and (2) the underlying judgment had to include an award for attorney fees pursuant to Code of Civil Procedure section 1033.5, subdivision (a)(10)(A), which provides that attorney fees may be awarded when authorized by contract.[7]

---

[6] Section 685.040 reads: "The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law. Attorney's fees incurred in enforcing a judgment *are* included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5." (Italics added.)

[7] Code of Civil Procedure section 1033.5, subdivision (a)(10)(A) provides in part that "[t]he following items are allowable as costs under [Code of Civil Procedure] Section 1032: [¶] . . . [¶] . . . Attorney fees, when authorized by . . . [¶] . . . [c]ontract."

Jaffe's request for attorney fees and costs is based upon the actions he took in the bankruptcy proceedings.[8] The determination of whether section 685.040 entitles Jaffe to attorney fees and costs incurred in the bankruptcy proceedings is not dependent upon the forum in which the expenses were incurred.

*Circle Star Center, supra*, 147 Cal.App.4th 1203, provides guidance to the issue before us even though it addressed a request for attorney fees expended in the bankruptcy court, but did not rely upon section 685.040. In *Circle Star Center*, a commercial tenant stopped paying rent and filed for bankruptcy. The landlord successfully moved to dismiss the bankruptcy case. Then, the landlord sued the tenant for breach of lease, defamation, and conversion and sought attorney fees based upon a provision in the lease. (*Circle Star Center, supra*, at pp. 1206–1207.) The trial court sustained the commercial tenant's demurrer to one cause of action and, upon the tenant's motion, struck the landlord's claim for attorney fees expended in the bankruptcy court, concluding that the fees were expended in litigating primarily federal law issues. Eventually, most of the issues were resolved through settlement. The landlord appealed from the judgment challenging the rulings on the demurrer and motion to strike. (*Id.* at p. 1208.)

*Circle Star Center* agreed with the landlord's argument that it had a "right to pursue the bankruptcy-related fees in state court as a matter of contract because dismissal of the bankruptcy case restored to the parties their preexisting rights and remedies." (*Circle Star Center, supra*, 147 Cal.App.4th at p. 1208.) *Circle Star Center* reasoned as follows: "When a case remains within the jurisdiction of the bankruptcy court, the rule is well settled: A party may not recover attorney fees incurred in litigating purely bankruptcy law issues unless the fees are authorized under a specific provision of the Bankruptcy Code. [Citation.]" (*Id.* at pp. 1208–1209, fn. omitted.) However, this principle does not preclude a party from pursuing the fees incurred in obtaining the dismissal of a bankruptcy proceeding in postbankruptcy state court contract actions. (*Id.* at p. 1209.) The landlord's case was not against a bankruptcy estate and the commercial tenant's bankruptcy petition had been dismissed. After the bankruptcy was dismissed, the bankruptcy case was undone and the tenant's debts "restored to the status they were in before it filed for bankruptcy." (*Ibid.*) The state court contract action could proceed; the issue was " 'subject to the general laws, unaffected by bankruptcy concepts.' [Citation.]" (*Ibid.*, italics omitted.) Permitting the landlord "to seek contractual attorney fees incurred in securing the dismissal of [the commercial tenant's] bankruptcy proceeding does not interfere with the

---

[8] As noted above, we collectively refer to the bankruptcy proceedings to include those steps taken by Jaffe to obtain a dismissal of Pacelli's bankruptcy petition and all related appeals, including those to the district court and Ninth Circuit Court of Appeals, as well as those taken in the adversary proceeding filed by Jaffe.

uniformity required by federal bankruptcy law or risk conflating federal procedural remedies with state tort lawsuits. Nor does permitting the recovery of contractual attorney fees interfere with the bankruptcy court's control of its proceedings." (*Id.* at p. 1210.)

*Circle Star Center* also rejected the argument that "the threat of a state court award of contract-based attorney fees incurred in bankruptcy litigation might discourage some from seeking the protection of the bankruptcy court." (*Circle Star Center, supra,* 147 Cal.App.4th at p. 1210.) The appellate court stated that when fees incidental to a bankruptcy are awarded by a state court following a dismissal of a bankruptcy "or with the bankruptcy court's acquiescence that a lawsuit outside of bankruptcy may proceed," "they are awarded as a matter of contract to a party who prevails in the state litigation, and they are awarded as an item of costs, not as a penalty. (Civ. Code, § 1717.)" (*Circle Star Center, supra,* at p. 1210, fn. omitted.) Thus, "potential liability for contract-based attorney fees does not have the same disincentive specter that tort liability and damages for misuse of bankruptcy processes would have." (*Ibid.*)

*Circle Star Center* then addressed the bankruptcy court's discretion to issue awards for attorney fees as sanction orders. (10 Collier on Bankruptcy (15th ed. rev. 2008) ¶ 9011.07, p. 9011-18 [bankruptcy court has discretion to impose sanctions pursuant to Fed. Rules Bankr.Proc., rule 9011, 11 U.S.C.].) The appellate court stated, "At oral argument [the commercial tenant] asserted that if [the landlord] wished to obtain attorney fees for its effort in securing dismissal of [the tenant's] bankruptcy it could have sought them in the bankruptcy court as a penalty or sanction pursuant to Federal Rules of Bankruptcy, rule 9011. But such an award is predicated on a showing that the assessed party has engaged in frivolous, unnecessary or meritless litigation, and such fees are awarded for the primary purpose of deterring future conduct rather than as compensation to the moving party. [Citation.]" (*Circle Star Center, supra,* 147 Cal.App.4th at p. 1210, fn. 7.)

The rationale of *Circle Star Center* is applicable to a request of an award pursuant to section 685.040. Once Pacelli's bankruptcy petition has been dismissed, Pacelli's debt is restored to the status it had before the filing of the bankruptcy petition. Jaffe's claims for attorney fees and costs are not against Pacelli's bankruptcy estate and Pacelli's debts are subject to state law unaffected by bankruptcy concepts. Jaffe's enforcement proceedings may proceed. Jaffe is entitled to request in state court an award of attorney fees and costs for those efforts exerted in the bankruptcy proceedings, even if the bankruptcy court had the discretion to make such an award as a penalty or sanction. Jaffe is seeking an award as a matter of statutory right as conferred by section 685.040, and not as a penalty. (Fed. Rules Bankr.Proc., rule 9011,

11 U.S.C.; *Circle Star Center, supra*, at p. 1210, fn. 7; 10 Collier on Bankruptcy, *supra*, ¶ 9011.07, p. 9011-18 [bankruptcy court has discretion to impose sanctions pursuant to Fed. Rules. Bankr.Proc., rule 9011].)

■ Further, Jaffe met the two requisite requirements of section 685.040.

First, the entire purpose of Pacelli's bankruptcy filing, and her related appeals, was to avoid paying the judgment Jaffe sought to enforce. Pacelli sought to sabotage Jaffe's collection efforts. Jaffe filed the adversary proceeding seeking a determination that Pacelli was not entitled to have her debts discharged in bankruptcy. Had Pacelli been successful in the bankruptcy proceedings, the judgment in the superior court would have been extinguished and made unenforceable by the bankruptcy court's discharge order. (See fn. 4, *ante*.) Jaffe's preventive measures were directly related to the continued enforceability of the superior court's judgment entered on October 7, 1996, as renewed on March 4, 2003. Jaffe's actions in the bankruptcy proceedings were necessary in order to maintain, preserve, and protect the enforceability of the judgment. Jaffe successfully blocked Pacelli's efforts to have the debt discharged by the bankruptcy court and Jaffe protected the judgment. Jaffe's actions in the bankruptcy proceedings are enforcement proceedings pursuant to section 685.040.

Second, the promissory note that gave rise to the underlying case and to the resulting judgment rendered against Pacelli included an attorney fees provision. The October 7, 1996, judgment contained an attorney fees award based on the contractual provision in the promissory note, pursuant to Code of Civil Procedure section 1033.5, subdivision (a)(10)(A).

Thus, Jaffe is entitled pursuant to section 685.040 to recover reasonable attorney fees and necessary costs incurred in the bankruptcy proceedings to enforce the judgment. To conclude otherwise would encourage judgment debtors to file bogus bankruptcy petitions and potentially escape paying for the attorney fees and costs incurred by the creditors in combating those petitions.[9]

The trial court erred in denying Jaffe's request for attorney fees and costs expended in litigating the bankruptcy proceedings.

[9] By our opinion we take no position as to whether Jaffe is entitled to all amounts claimed for the efforts expended in the bankruptcy court proceedings. It will be for the trial court on remand to determine if all expenses claimed by Jaffe were reasonable and necessary. We also note that the present case does not involve a situation in which the bankruptcy court addressed a request for attorney fees prior to the creditor making the same request in the superior court. (Cf. *Chelios v. Kaye, supra*, 219 Cal.App.3d at p. 78 & fn. 2.)

## IV.

## DISPOSITION

The trial court's orders of April 24, 2007, June 4, 2007, and July 13, 2007, are reversed insofar as they denied Jaffe an award of attorney fees and costs for the efforts he expended in the bankruptcy proceedings. In all other respects, the orders are affirmed. The matter is remanded to the trial court for further proceedings consistent with this opinion. Jaffe is awarded costs on appeal.

Klein, P. J., and Kitching, J., concurred.