Filed 6/2/15  Harris v. Ottovich CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DARRELL K. HARRIS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HARVEY OTTOVICH,<br><br>    Defendant and Appellant. | A139146 & A139720<br><br>(Alameda County<br>Super. Ct. No. HG03112816) |
| DARRELL K. HARRIS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HARVEY OTTOVICH et al.,<br><br>    Defendants;<br><br>KAREN RAYL,<br><br>    Third Party Claimant and Appellant. | A139722<br><br>(Alameda County<br>Super. Ct. No. HG03112816) |
| DARRELL K. HARRIS,<br><br>    Plaintiff and Respondent,<br>v.<br><br>MARK OTTOVICH,<br><br>    Defendant and Appellant. | A139723<br><br>(Alameda County<br>Super. Ct. No. HG03112816) |

1

Darrell Harris obtained a money judgment against his former landlords, Harvey Ottovich and Mark Ottovich, for wrongful eviction.[1]  To enforce that judgment, Harris obtained a writ of execution, levied upon certain real property owned by Harvey, and obtained an order of sale.  A third party took title to the property through a sheriff's sale, and a portion of Harris's judgment was satisfied from the sale proceeds.  In this consolidated appeal, Harvey, Mark, and their sister Karen Rayl (collectively appellants) challenge several postjudgment orders:  an award of attorney fees to Harris for enforcement and collection work; denial of Harvey's motion to stay the sale, set a minimum price, or appoint a receiver; and denial of Mark's and Rayl's motions regarding their asserted third party claims in the property.  They also maintain that the trial judge should have been disqualified.  We find no error and affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In 2003, Mark and Harvey sought to evict Harris from his rental unit at 37255 Mission Boulevard, Fremont, California (the Property).  They filed a complaint for unlawful detainer and obtained a default judgment of possession against Harris.  On August 28, 2003, the default judgment was set aside.  Harris obtained an injunction requiring return of his personal property and an order awarding attorney fees.

Harris then sued Harvey and Mark for wrongful eviction in the instant action.  In January 2005, Harris obtained a default judgment, which was ultimately set aside for improper service.  The court ordered Harvey and Mark to file responsive pleadings.  On September 1, 2005, Harris filed a first amended complaint against Harvey and Mark, which alleged nine different causes of action, including conversion, intentional infliction of emotional distress, and violations of Civil Code sections 789.3, subdivision (b), and 1942.5.  Although the record indicates they were served with notice of trial, neither Harvey nor Mark attended the bench trial held before the Honorable Winifred Smith.  On November 3, 2008, a judgment of $111,534 was entered against Harvey and Mark

---

[1] Because brothers Harvey and Mark Ottovich share the same last name, we hereafter refer to each of them by first name for purposes of clarity.

(November 2008 Judgment). Harris filed a motion for attorney fees, based on the fee shifting provisions of Civil Code sections 789.3 and 1942.5.[2] Neither brother opposed the motion and, on February 4, 2009, the trial court awarded $20,000 in fees (February 2009 Fee Order).

On October 22, 2010, Harris obtained a writ of execution in the amount of $119,751.33—the amount of the November 2008 Judgment plus accrued interest (less a payment of $7,519.10). The writ of execution named both Mark and Harvey as judgment debtors. On March 7, 2011, a notice of levy was recorded on the Property by the Alameda County Sheriff. Although the deed does not appear in the record, it is undisputed that legal title to the Property was vested in Harvey alone.

On July 8, 2011, Judge Smith granted Harris's application for an order allowing a sale of the Property (July 2011 Order of Sale). Judge Smith specifically determined in the order of sale that the Property was not subject to a homestead exemption and ordered that it be "sold in the manner provided in Code of Civil Procedure sections 701.510– 701.680."[3] Harvey and Mark filed a notice of appeal from the July 2011 Order of Sale (No. A132669), but the appeal was dismissed for failure to file an opening brief.

Meanwhile, on August 23, 2011, Harvey and Mark obtained an order vacating the fees award in the original unlawful detainer case. The Honorable Wynne Carvill reasoned that Harris failed to give Harvey and Mark sufficient notice. Similarly, on December 11, 2013, they were also able to dissolve the injunction in the unlawful detainer case because of "procedural deficiencies in the way [it] was entered."

---

[2] Civil Code section 789.3, subdivision (d), provides in relevant part: "In any action under subdivision (c) the court shall award reasonable attorney's fees to the prevailing party." Civil Code section 1942.5, subdivision (g), provides: "In any action brought for damages for retaliatory eviction, the court shall award reasonable attorney's fees to the prevailing party if either party requests attorney's fees upon the initiation of the action."

[3] Undesignated statutory references are to the Code of Civil Procedure.

Harvey filed for bankruptcy in December 2011.  Mark followed suit in February 2013.  Harris was granted relief from the automatic stay (11 U.S.C. § 362) in Harvey's bankruptcy case, permitting Harris to enforce his remedies against the Property.

The case was transferred to the Honorable Lawrence John Appel, who accepted a peremptory challenge (§ 170.6) filed against him by Harvey, concluding that it was timely.  The presiding judge vacated that order, determining that the judgment debtors had already exhausted their one peremptory challenge when they successfully challenged the Honorable John M. True in 2011.  The case was returned to Judge Appel.

An execution sale of the Property was finally set for May 1, 2013.  Prior to the sale, on April 22, 2013, Harvey filed a motion to stay the sale, set a minimum price and/or appoint a receiver.  Harvey argued that the sale "should be stayed until all motions and potential appeals can be heard without the judgment being executed which the defendants are seeking to set aside.  Voiding prior judgments will eliminate any basis to collect the subject judgment . . . and eliminate any need to sell the [Property].  By the time of this ex parte application, [Harvey] will have filed a motion before Judge Carvill to clarify his August 23, 2011 Order, which essentially found that the July 18, 2003 injunction was procured by not providing [Harvey with notice.]"  In support of his motion, Harvey submitted an appraisal from realtor Barry Ripp who estimated the value of the Property was between $725,000 and $750,000.

On the day before the scheduled sale, Judge Appel heard Harvey's motion to stay.  In the minute order denying the motion (April 30 Order Denying Stay), Judge Appel wrote:  "[Harvey] has not sufficiently demonstrated that the motion that he states he 'will have filed [by April 23, 2013] before Judge Carvill . . . bears any relationship to the [July 2011 Order of Sale] that he seeks to stay. . . . [Harvey] merely argues (without providing any supporting facts, evidence or authority) that the 'injunction' in the other case 'was the underpinning of the instant default judgment.' . . . The judgment in this action was based on the nine causes of action . . . alleging, inter alia, violation of Civil Code § 789.3(b), wrongful eviction, violation of Civil Code § 1942.5, breach of covenant of quiet enjoyment, and intentional infliction of emotional distress.  Those causes of action

4

do not appear to be based whatsoever on the injunction issued in [the original unlawful detainer case], much less to be based entirely on such injunction. [¶] Second, [Harvey] has already had numerous opportunities to seek to vacate or review the judgment in this case and the [July 2011 Order of Sale]. . . . The court does not find it appropriate to delay enforcement of the judgment or order of sale given [Harvey's] multiple prior opportunities to obtain review of them."

Mark and Rayl also served purported third party claims. Mark claimed an ownership interest in the Property worth $578,000 based on his investment of labor and materials for improvement and maintenance of the Property. Rayl claimed that she held a promissory note, in the principal amount of $450,000, that "was supposed to be secured by the [Property]." However, no deed of trust was referenced in her claim and appellants now concede that one was never recorded.

On May 1, 2013, Harris tendered two $10,000 checks as a deposit in lieu of undertaking in connection with the third party claims. On receipt of the third party claims, the sheriff determined the claims were invalid on their face and took no further action. On May 1, 2013, the Property was sold to a third party for $79,000.

After the sale, Mark and Rayl filed motions, in propria persona, claiming that Harris's deposit was insufficient to allow the sheriff to proceed with the sale. Judge Appel denied a peremptory challenge filed by Rayl.[4] Then, on July 9, 2013, Judge Appel denied both motions (July 9 Orders Regarding Undertakings). Judge Appel reasoned: "[Mark] . . . is a defendant in this action and is named in the judgment on which the writ of execution for the sale of the subject property was based. . . . 'The third party claim procedures may not be utilized by parties to the action.' (Ahart, [Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 2014)] ¶ 6:1605 [p. 6H-2 (rev. #1, 2010)]; see also *Commercial & Farmers* [*Nat. Bk.*] *v. Hetrick* (1976) 64 Cal.App.3d 158, 165 . . . .)" With respect to Rayl's claim, Judge Appel explained: "Rayl states that her

---

[4] Appellants also filed several unsuccessful motions to challenge Judge Appel for cause. Judge Appel filed verified answers and then struck the challenges. Judge Appel also declared Mark a vexatious litigant. (§ 391, subd. (b).)

5

[c]laim 'was for a lien interest under . . . [s]ection 720.210' . . . . That statute, however, allows a third person 'claiming a security interest in or lien on . . . personal property' levied under a writ of execution to make a third party claim. ( . . . § 720.210(a).) Rayl did not present a claim of a security interest or lien on 'personal property' but instead presented a claim as to real property being levied under a writ of execution. . . . Although [section] 720.110 allows a third party claim as to 'real property . . . levied upon under a . . . writ of execution,' such a claim must be as to 'ownership or the right [of] possession of property . . . .' ( . . . § 720.110(a).) Rayl did not present such a claim either."

After continuing the matter for clarification from the bankruptcy court regarding whether the motion for fees violated the automatic stay, Judge Appel also granted, on July 15, 2013, Harris's motion for an award of attorney fees for postjudgment collection activities (July 15 Fee Order). Judge Appel awarded $39,130 against both Harvey and Mark jointly and $8,685 against Harvey separately.

Harvey filed a timely notice of appeal from the April 30 Order Denying Stay (No. A139146) and the July 15 Fee Order (No. A139720). Rayl and Mark each filed a timely notice of appeal from their respective July 9 Orders Regarding Undertakings (Nos. A139722, A139723). We consolidated the four appeals.[5]

## II.    DISCUSSION

On appeal, appellants argue that the trial court's July 15 Fee Order must be reversed (1) because fees incurred for collection activities are not recoverable unless provided for by contract; or (2) because the trial court abused its discretion in failing to apportion fees. Appellants also contend that the trial court abused its discretion in denying Harvey's motion to stay and refusing to set a minimum price or appoint a receiver. With respect to Mark's and Rayl's third party claims, appellants contend that

---

[5] After appellate briefing was partially complete, we received notice that Mark and Harvey had filed a notice of removal in federal court. We issued an order staying appellate proceedings during pendency of federal court proceedings. On November 13, 2014, we lifted our stay after the United States District Court for the Northern District of California entered an order remanding the matter to state court.

Harris's deposit of funds was insufficient to allow the sale to go forward. Finally, they contend that Judge Appel should have been disqualified.

Appellants concede that their arguments regarding the motion to stay and third party undertakings are now moot. They argue, however, that we should reach the merits because a recurrence of the controversy may occur between the parties, in light of the fact that a portion of the November 2008 Judgment remains unsatisfied. " '[T]here are three discretionary exceptions to the rules regarding mootness: (1) when the case presents an issue of broad public interest that is likely to recur [citation]; (2) when there may be a recurrence of the controversy between the parties [citation]; and (3) when a material question remains for the court's determination [citation].' " (*Malatka v. Helm* (2010) 188 Cal.App.4th 1074, 1088.) We will assume that appellants have established an exception. Nonetheless, we conclude that their arguments are wholly without merit.

A.     *Enforcement of Judgment by Real Property Lev*y

"Detailed statutory provisions govern the manner and extent to which civil judgments are enforceable. In 1982, following the recommendations of the California Law Revision Commission, the Enforcement of Judgments Law (EJL) was enacted. The EJL . . . is a comprehensive scheme governing the enforcement of all civil judgments in California." (*Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 546.) "The most common method of enforcing a money judgment is to levy on the judgment debtor's property under a writ of execution." (Ahart, Cal. Practice Guide: Enforcing Judgments and Debts, *supra*, ¶ 6:300, p. 6D-1 (rev. #1, 2014) (hereafter Ahart).) "A writ of execution is a court process directed to the levying officer (i.e., sheriff, marshal or constable) of the county where the levy is to be made . . . . The writ requires the levying officer to enforce the money judgment in the manner prescribed by law." (*Id.* at ¶ 6:311, p. 6D-3 (rev. #1, 2014), citing § 699.520.)

However, "[a] judgment creditor must obtain a court order of sale after a noticed hearing before a judgment debtor's real property dwelling may be sold at an execution sale. The main purpose of the hearing procedure is to determine whether the dwelling is subject to the homestead exemption, and to ensure that the debtor is paid the amount of

7

the exemption if the property is sold." (Ahart, *supra,* ¶ 6:756, pp. 6D-96 to 6D-97 (rev. #1, 2011), italics omitted.) "The court must determine at a hearing the amount of the 'dwelling exemption' and the fair market value of the property. [¶] Thereafter, the real property dwelling may not be sold at an execution sale unless the bid exceeds the amount needed to satisfy 'all lines and encumbrances' on the property plus the amount of the homestead exemption." (*Id.* at ¶ 6:1014, p. 6E-62 (rev. #1, 2013), citing § 704.800, subd. (a).) "If the court finds the dwelling is not exempt, the order need only indicate that the dwelling be sold in the same manner as like nonexempt property." (Ahart, at ¶ 6:785, p. 6D-105 (rev. #1, 2013), citing § 704.780, subd. (b) ["[i]f the court determines that the dwelling is not exempt, the court shall make an order for sale of the property in the manner provided in Article 6 (commencing with Section 701.510) of Chapter 3"].)

"The [EJL also] includes procedures for determining the claims of third persons, i.e., those other than the judgment debtor and creditor. (§ 720.010 et seq.) The purpose of third party claims is to give a quick and effectual remedy to third parties whose property has been levied upon by mistake. [Citation.] [¶] The third party claims procedure is available to a person claiming a superior ownership or possessory right in real property that is subjected to attachment or execution to satisfy a money obligation." (*Regency Outdoor Advertising, Inc. v. Carolina Lanes, Inc.* (1995) 31 Cal.App.4th 1323, 1329.) "A person making a third-party claim under this chapter shall file the claim with the levying officer, together with two copies of the claim, after levy on the property but before the levying officer does any of the following: [¶] (a) Sells the property. [¶] (b) Delivers possession of the property to the creditor. [¶] (c) Pays proceeds of collection to the creditor." (§ 720.120.) If the third party does so and the judgment creditor does not timely file an undertaking, the levying officer must release the property. (§ 720.170, subd. (a).) "If the creditor files with the levying officer an undertaking . . . within the time allowed . . . [¶] . . . The levying officer shall execute the writ in the manner provided by law unless the third person files an undertaking to release the property . . . ." (§ 720.160, subd. (a)(1).) "[E]xecution sales are absolute and may not be

8

set aside 'for any reason' unless the judgment creditor was the purchaser." (*Gonzalez v. Toews* (2003) 111 Cal.App.4th 977, 981.)

B.      *Attorney Fees*

Appellants contend that the trial court erred in awarding Harris attorney fees for postjudgment enforcement work. "California follows the 'American rule,' under which each party to a lawsuit ordinarily must pay his or her own attorney fees." (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 516.) However, attorney fees are allowed as costs to the prevailing party when authorized by contract, statute, or law. (§§ 1021, 1032, subds. (a)(4) & (b), 1033.5, subd. (a)(10).) The trial court's determination of the legal basis for an attorney fee award is a question of law we review de novo. (*Globalist Internet Technologies, Inc. v. Reda* (2008) 167 Cal.App.4th 1267, 1273.) We review the amount of the trial court's award of attorney fees for abuse of discretion. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.)

In awarding fees for Harris's enforcement efforts, the trial court relied on section 685.040. That section provides: "The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. Attorney's fees incurred in enforcing a judgment are *not included* in costs collectible under this title *unless otherwise provided by law*. *Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph* (*A*) *of paragraph* (*10*) *of subdivision* (*a*) *of Section 1033.5*." (Italics added.) Section 1033.5, subdivision (a)(10)(A), provides that attorney fees may be awarded as costs when authorized "by contract."

Appellants focus on the final sentence of section 685.040 and contend that postjudgment enforcement fees can *only* be recovered when provided for by contract. It is undisputed that Harris is not entitled to attorney fees pursuant to any contract.

9

Appellants' argument fails, however, because it is not supported by the plain language of the statute or any reported authority.[6]

In fact, our Supreme Court has clearly rejected appellants' position, explaining, "when a fee-shifting statute provides the substantive authority for an award of attorney fees, any such fees incurred in enforcement of the judgment are within the scope of section 685.040." (*Conservatorship of McQueen* (2014) 59 Cal.4th 602, 614; accord, *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1141 & fn. 6 (*Ketchum*) [under § 685.040 "a litigant [is] entitled to costs for successfully enforcing a judgment . . . , but not attorney fees *unless there is some other legal basis for such an award*," such as is provided by § 425.16, subd. (c)]; *Lucky United Properties Investment, Inc. v. Lee* (2010) 185 Cal.App.4th 125, 140, fn. 9 ["the fact that the fees were not awarded pursuant to a contract is apparently immaterial"]; *Berti v. Santa Barbara Beach Properties* (2006) 145 Cal.App.4th 70, 77 (*Berti*) ["[the] argument ignores that the penultimate sentence of . . . section 685.040 authorizes postjudgment fees 'provided by law' "].)

"The final sentence of . . . section 685.040 . . . is intended to solve a problem unique to a claim for postjudgment fees in actions based on contract. A judgment extinguishes all further contractual rights, including the contractual attorney fees clause. [Citation.] Thus in the absence of express statutory authorization, such as that contained in the final sentence of . . . section 685.040, postjudgment attorney fees cannot be recovered. Fees authorized by statute do not present the same problem. A judgment does not act as a merger and a bar to statutory fees. (*Folsom v. Butte County Assn. of Governments* [(1982)] 32 Cal.3d [668,] 677–678.) Such fees are incident to the judgment. (*Ibid.*) Thus there was no need to include statutory fees in the final sentence of . . . section 685.040." (*Berti, supra,* 145 Cal.App.4th at p. 77.) If nothing in the fee-shifting statute limits an award of fees to those incurred prior to the judgment, then postjudgment enforcement fees are otherwise provided by law. (*Ibid.*)

---

[6] Appellants cite an unpublished opinion; however, as counsel surely knows, such authority may not be relied on or cited. (Cal. Rules of Court, rule 8.1115; *People v. Wallace* (2009) 176 Cal.App.4th 1088, 1105, fn. 9.)

Here, just as in *Berti* and *Ketchum*, Harris recovered his postjudgment enforcement attorney fees under statutes that do not limit fee awards to those incurred before judgment. (Civ. Code, §§ 789.3, subd. (d), 1942.5, subd. (g).) Accordingly, the trial court did not err in awarding attorney fees in its July 15 Fee Order.

C.     *Apportionment of Fees*

In the alternative, appellants argue that the trial court abused its discretion by failing to apportion fees. Their apportionment argument has two prongs. First, they contend that the trial court abused its discretion by failing to apportion fees relating to Harris's nonstatutory causes of action. Specifically, they argue: "There [are] no legal grounds for awarding attorney fees other than those provided to the wrongful eviction causes of action . . . ." We agree with Harris that this argument was forfeited by not being presented to the trial court. (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 ["arguments not asserted below are waived and will not be considered for the first time on appeal"]; *Regency Outdoor Advertising, Inc. v. Carolina Lanes, Inc., supra,* 31 Cal.App.4th at p. 1333.)

Although appellants frame their argument as a challenge to the postjudgment order awarding enforcement fees, it is actually an argument that should have been raised with respect to the February 2009 Fee Order made in connection with the underlying November 2008 Judgment. Appellants support their argument by asserting "the [t]rial [c]ourt's initial award of punitive damages in the [November 2008 Judgment] shows that the bulk of the award came from non-statutory claims. . . . [¶] . . . At a minimum, two-thirds of the attorney fees should be apportioned because only one-third of claims involved statutes giving rise to attorney fees." Appellants cannot challenge the February 2009 Fee Order now. (Cal. Rules of Court, rule 8.104, subd. (a); § 904.1, subd. (a)(2); *Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 239 [" ' "[t]he law of this state does not allow, on an appeal from a judgment, a review of any decision or order from which an appeal might previously have been taken" ' "].)

Next, appellants argue that the trial court abused its discretion in awarding fees connected to the motion to declare Mark a vexatious litigant and Harris's efforts to obtain

11

relief from the automatic bankruptcy stay. They argue: "[T]he motion to have Mark . . . declared a vexatious litigant was punitive in nature and not in furtherance of trying to collect any judgment. . . . [T]here is no authority for the proposition that fees incurred in getting relief from the automatic stay are recoverable in state court postjudgment proceedings." Fees incurred in connection with the vexatious litigant motion were specifically excluded from the award, and appellants' position on bankruptcy fees is unsupported. (See *Chinese Yellow Pages Co. v. Chinese Overseas Marketing Services Corp.* (2008) 170 Cal.App.4th 868, 870 ["section 685.040 can extend to reasonable and necessary attorney fees and costs incurred in postjudgment bankruptcy proceedings"]; *Globalist Internet Technologies, Inc. v. Reda, supra,* 167 Cal.App.4th at pp. 1269–1270 [fees incurred in defending separate action to enforce alleged agreement to settle judgment debt at substantial reduction were recoverable under § 685.040]; *Jaffe v. Pacelli* (2008) 165 Cal.App.4th 927, 929–930 (*Jaffe*) [§ 685.040 entitles a party to postjudgment fee award for efforts in combating bankruptcy proceedings].)[7]

Appellants claim that they should be immune from reimbursing such fees because it was Harris's "unilateral choice" to seek relief from the automatic stay. The *Jaffe* court rejected a similar argument. "[T]he entire purpose of [the judgment debtor's (Debtor)] bankruptcy filing, and her related appeals, was to avoid paying the judgment which [the judgment creditor (Creditor)] sought to enforce. [Debtor] sought to sabotage [Creditor's] collection efforts. [Creditor] filed the adversary proceeding seeking a determination that [Debtor] was not entitled to have her debts discharged in bankruptcy. Had [Debtor] been successful in the bankruptcy proceedings, the judgment in the superior court would have been extinguished and unenforceable by the bankruptcy court's discharge order. [Citation.] [Creditor's] preventive measures were directly related to the continued

---

[7] Appellants correctly point out that these cases involved underlying contractual fee provisions. (*Chinese Yellow Pages Co. v. Chinese Overseas Marketing Services Corp.*, *supra,* 170 Cal.App.4th at p. 871; *Globalist Internet Technologies, Inc. v. Reda, supra*, 167 Cal.App.4th at p. 1270; *Jaffe, supra,* 165 Cal.App.4th at p. 930.) However, nothing in the authority suggests this fact is dispositive.

enforceability of the superior court's judgment . . . . [His] actions in the bankruptcy proceedings were necessary in order to maintain, preserve, and protect the enforceability of the judgment. [Creditor] successfully blocked [Debtor's] efforts to have the debt discharged by the bankruptcy court and [he] protected the judgment. [Creditor's] actions in the bankruptcy proceedings are enforcement proceedings pursuant to section 685.040." (*Jaffe, supra*, 165 Cal.App.4th at p. 938.)

The trial court did not abuse its discretion in including attorney fees incurred by Harris in Harvey's bankruptcy proceeding.

D.        *Motion to Stay, Set Minimum Price, or Appoint Receiver*

Appellants contend the trial court erred in denying Harvey's motion to stay or appoint a receiver because the April 30 Order Denying Stay is silent regarding Harvey's interests. "In addition to sheriffs' sales, sales of property to enforce money judgments may also be performed by receivers." (*Wells Fargo Leasing, Inc. v. D & M Cabinets* (2009) 177 Cal.App.4th 59, 70.) Section 699.070, subdivision (a), provides the trial court with discretion to appoint a receiver "or order the levying officer to take any action . . . if the court determines that the property is perishable or will greatly deteriorate or greatly depreciate in value *or that for some other reason the interests of the parties will be best served by the order*."[8] (Italics added.) However, appellants have shown no affirmative evidence that the trial court failed to exercise its discretion. We will not presume as much. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [" '[j]udgment or order of the lower court is *presumed correct* . . . and error must be affirmatively shown' "].)

Appellants argue the interests of justice necessitated appointment of a receiver or setting of a minimum price because if the court had done so, the Property "could have been sold [at] a price in line with [its] value, which would have paid off the judgment in full and which would have allowed the judgment debtors to have the benefit of their

_____

        8 Section 708.620 states, "The court may appoint a receiver to enforce the judgment where the judgment creditor shows that, considering the interests of both the judgment creditor and the judgment debtor, the appointment of a receiver is a reasonable method to obtain the fair and orderly satisfaction of the judgment."

13

equity." Essentially, they contend that a minimum price had to be set because otherwise Harvey would be left without a remedy for the sale of the Property at an inadequate price. We disagree.

To the extent appellants are arguing that section 704.800 required a minimum price to be established, appellants have forfeited that argument by failing to raise it on appeal from the July 2011 Order of Sale. Section 704.800, subdivision (b), provides: "If no bid is received at the sale of a homestead pursuant to a court order for sale that is 90 percent or more of the fair market value . . . , the homestead shall not be sold" except in certain exceptions. However, in the July 2011 Order of Sale, Judge Smith determined that the Property was not subject to a homestead exemption. The July 2011 Order of Sale is long since final. (Cal. Rules of Court, rule 8.104(a); § 904.1, subd. (a)(2); *Sole Energy Co. v. Petrominerals Corp., supra,* 128 Cal.App.4th at p. 239.)

Section 701.620, subdivision (a) applies and automatically provides for a minimum bid of the following amounts: "(1) The amount of all preferred labor claims that are required by Section 1206 to be satisfied from the proceeds. [¶] (2) The amount of any state tax lien . . . that is superior to the judgment creditor's lien. [¶] (3) If the purchaser is not the judgment creditor, the amount of any deposit made pursuant to Section 720.260 . . . ." Accordingly, "[m]ost sales have no minimum bid because the judgment debtor's property is rarely subject to preferred wage claims or tax liens." (Ahart, *supra,* ¶ 6:690, p. 6D-82 (rev. #1, 2002).)

Nonetheless, the EJL provides numerous provisions "designed to preserve the debtor's rights in his or her property, not to diminish them." (*Grothe v. Cortlandt Corp.* (1992) 11 Cal.App.4th 1313, 1323.) For instance, in section 701.545, that "[n]otice of sale of an interest in real property . . . may not be given pursuant to Section 701.540 until the expiration of 120 days after the date notice of levy on the interest in real property was served on the judgment debtor." "[T]he legislative history states that the provision is designed to give the judgment debtor 'time to redeem the property from the judgment creditor's lien before the sale, to sell the property, or to seek the attendance of other potential purchasers at the judicial sale." (*Grothe,* at p. 1323.) Appellants failed to take

14

advantage of the two-year period that elapsed between service of the notice of levy and the sale. The trial court followed the dictates of the EJL. We cannot say it abused its discretion.

Appellants also contend that the trial court abused its discretion by not staying the sale under section 918.5. Section 918.5, subdivision (a), provides: "The trial court may, in its discretion, stay the enforcement of a judgment or order *if the judgment debtor has another action pending* on a disputed claim against the judgment creditor." (Italics added.) However, Harvey presented no evidence that he, in fact, had another action pending against Harris at the time.[9] Appellants make a related argument that because they were successful in setting aside the injunction and fee order from the original unlawful detainer action that the November 2008 Judgment in the instant action was and is somehow in doubt. But the November 2008 Judgment has not been set aside and is now long since final. The trial court did not abuse its discretion.

E.      *Third Party Claims*

Next, appellants argue the trial court erred in denying both Mark's and Rayl's motions because the trial court misapplied the undertaking requirements of the EJL. Specifically, with respect to Mark's claim, appellants argue that Harris was required to post a bond, rather than make a deposit of funds. (See § 720.160, subd. (a) [levying officer shall execute the writ "[i]f the creditor files with the levying officer an undertaking . . . within the time allowed under [§ 720.140, subd. (b)]"].) With respect to Rayl's claim, appellants argue that Harris was required to either post a bond or make a deposit of funds in the full amount of her claim—$450,000. (See § 720.260, subd. (a)

---

[9] Mark sued Harris on April 13, 2012, for malicious prosecution and abuse of process. Harvey joined that action, but not until September 11, 2013—well after the motion to stay was denied. On January 21, 2014, the suit was dismissed without prejudice. Harris asked us to take judicial notice of the first amended complaint filed by Mark and Harvey against Harris and the order dismissing that complaint. We previously deferred ruling on the unopposed request, but now grant it. (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a) ["reviewing court may take judicial notice of any matter specified in [§] 452"].)

[levying officer shall execute the writ "[i]f the creditor . . . either files with the levying officer an undertaking . . . or makes a deposit with the levying officer of the amount claimed under [§] 720.230"].)

We need not resolve whether the undertaking was sufficient because Mark's and Rayl's third party claims were facially invalid. Mark is not a third party. He is a judgment debtor. "There is no statutory authorization for the use of third party claim procedures by named defendants in an action." (*Commercial & Farmers Nat. Bk. v. Hetrick, supra,* 64 Cal.App.3d at p. 165 [construing similar provision of former law]; see also *Regency Outdoor Advertising, Inc. v. Carolina Lanes, Inc., supra,* 31 Cal.App.4th at p. 1329 ["[EJL] includes procedures for determining the claims of third persons, i.e., those other than the judgment debtor and creditor"]; § 720.020 [" '[c]reditor' means the judgment creditor]; § 720.030 [" '[d]ebtor' means the judgment debtor"].)

Rayl's third party claim was likewise invalid because, without a deed of trust securing the promissory note, she had no ownership interest in the Property.[10] (See *Bartold v. Glendale Federal Bank* (2000) 81 Cal.App.4th 816, 821 ["[t]he borrower (trustor) executes a promissory note and deed of trust, thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of the loan"]; 720.110, subd. (a) ["[a] third person *claiming ownership or the right to possession* of property may make a third-party claim under this chapter . . . [w]here *real property* has been levied upon under a writ of attachment or a writ of execution" (italics added)].)

F.    *Judicial Bias*

Finally, appellants argue that Judge Appel should have been disqualified from hearing this matter. Harvey and Rayl assert that their appeals from other postjudgment orders encompass review of the denial of their motions to disqualify Judge Appel. The rulings on these motions are not properly before us.

---

[10] In their reply brief, appellants implicitly concede that Rayl's interest was insufficient.

Section 170.3, subdivision (d), provides: "The determination of the question of the disqualification of a judge is not an appealable order and *may be reviewed only* by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding. The petition for the writ shall be filed and served within 10 days after service of written notice of entry of the court's order determining the question of disqualification." (Italics added.) "[T]his provision governs both for cause (§ 170.1) and peremptory (§ 170.6) challenges brought under the statutory scheme." (*People v. Brown* (1993) 6 Cal.4th 322, 333 (*Brown*), citing *People v. Hull* (1991) 1 Cal.4th 266, 272–273.) And it "creates an exception to the general rule that interlocutory rulings are reviewable on appeal from a final judgment." (*Brown,* at p. 333.) Thus, "a petition for writ of mandate is the exclusive method of obtaining review of a denial of a judicial disqualification motion." (*People v. Mayfield* (1997) 14 Cal.4th 668, 811.) Here, however, it is undisputed that appellants did not seek writ relief.

Our Supreme Court has observed that, "notwithstanding the exclusive-remedy provision of . . . section 170.3, '[one] may assert on appeal a claim of denial of the due process right to an impartial judge.' " (*People v. Panah* (2005) 35 Cal.4th 395, 445, fn. 16; accord, *Brown, supra,* 6 Cal.4th at pp. 327, 334–335.) However, it has also said that, "[i]n order to give maximum effect to the Legislature's clear intent that disqualification challenges be subject to prompt review by writ [citation], we conclude that a litigant may, and should, seek to resolve such issues by statutory means, and that his negligent failure to do so may constitute a forfeiture of his constitutional claim." (*Brown,* at p. 336.)[11] "[I]n civil cases, a constitutional question must be raised at the earliest opportunity or it will be considered to be waived." (*Roth v. Parker* (1997) 57 Cal.App.4th 542, 548.)

---

[11] In *Brown*, the defendant did not forfeit his right to appeal on the basis of a constitutional due process claim because he sought writ relief, as required by section 170.3, subdivision (d), which was summarily denied. (*Brown, supra*, 6 Cal.4th at p. 336.)

Although appellants label their claim in due process terms, they substantively argue that the trial court did not comply with the statute. They contend that Judge Appel, in initially accepting Harvey's section 170.6 challenge, made a determination that he was "actual[ly] bias[ed]" and that the presiding judge's order returning him to this matter violated section 170.3, subdivision (a)(1). Section 170.3, subdivision (a)(1), states that, upon recusal, the recused judge "shall not further participate in the proceeding, except as provided in Section 170.4, unless his or her disqualification is waived by the parties as provided in subdivision (b)." Appellants forfeited this statutory claim by failing to seek writ review. (*People v. Freeman* (2010) 47 Cal.4th 993, 1000.)

Even if the argument was properly before us, we would not agree with appellants' characterization of the record. Judge Appel was not disqualified, and he made no finding of bias. Rather, Judge Appel merely concluded that the initial section 170.6 motion to disqualify him was timely. "Section 170.6 permits a party to obtain the disqualification of a judge for prejudice, based solely upon a sworn statement, without being required to establish prejudice as a matter of fact to the satisfaction of the court. [Citations.] When a party timely files, in proper form, a motion to disqualify a judge based upon this provision, the trial court is bound to accept the disqualification without further inquiry." (*The Home Ins. Co. v. Superior Court* (2005) 34 Cal.4th 1025, 1032.) The case was reassigned to Judge Appel when the presiding judge determined that appellants had already made a peremptory motion to disqualify Judge True.[12] Thereafter, the trial court also properly denied Rayl's additional peremptory challenge. "[O]nly one motion may be made for each side in any one action or special proceeding. (§ 170.6, subd. (a)(4).) . . . Importantly, these limitations apply even to third parties who are brought into an action or special proceeding after a challenge has been made or a factual issue has been

---

[12] In their reply brief, appellants assert that the challenge to Judge True "was not a peremptory challenge." We need not address this argument because it was raised for the first time in their reply brief. (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4.)

determined." (*National Financial Lending, LLC v. Superior Court* (2013) 222 Cal.App.4th 262, 270.)  Appellants have shown no error.

### III.    DISPOSITION

The challenged orders are affirmed.  Harris shall recover his costs on appeal.


_____
BRUINIERS, J.


WE CONCUR:


_____
JONES, P. J.


_____
SIMONS, J.