Filed 3/5/25  Pine Valley v. Ajinomoto North America CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PINE VALLEY, INC., | B321812 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC551112) |
| v. | |
| AJINOMOTO NORTH AMERICA, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Yolanda Orozco, Judge.  Reversed in part, affirmed in part.

Klapach & Klapach, Joseph S. Klapach; LA Superlawyers, William W. Bloch; Salomons Law Group, Gary Keith Salomons for Plaintiff and Appellant.

Kirkland & Ellis, Sierra Elizabeth, Christopher Lawless, and Kevin Bendix; Greines, Martin, Stein & Richland, Cynthia E. Tobisman, Alana H. Rotter and Rachel A. Beyda for Defendants and Appellants.

# INTRODUCTION

Pine Valley, Inc. developed frozen fried rice recipes and sold its fried rice products to retailers such as Trader Joe's. After Pine Valley contracted with an outside company to make the fried rice products, the outside company was purchased by Ajinomoto.[1] Ajinomoto then used Pine Valley's trade secret recipes to make its own fried rice products, which it began selling to Trader Joe's and other retailers. Pine Valley sued Ajinomoto for breach of contract, violation of California's Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.[2]) (UTSA), and other claims. In 2016 a jury found in favor of Pine Valley, found that Ajinomoto willfully and maliciously misappropriated Pine Valley's trade secrets, and awarded damages. The trial court denied Pine Valley's request for an injunction under the UTSA, but held that Ajinomoto must pay Pine Valley a royalty on sales of all fried rice products based on Pine Valley's recipes, for as long as Ajinomoto sold such products. The judgment stated that Ajinomoto could be relieved from the royalty requirement by submitting evidence that it was no longer using Pine Valley's trade secrets. The judgment, including the royalty award and an award of attorney fees to Pine Valley, was affirmed on appeal in 2019.

In 2020 Ajinomoto moved to amend the judgment to dissolve the royalty provision. Ajinomoto argued, as it did in the

---

[1] Appellants are Ajinomoto North America, Inc. and Ajinomoto Frozen Foods U.S.A., which have now been renamed Ajinomoto Health and Nutrition North America, Inc. and Ajinomoto Foods North America, Inc. We refer to the two entities collectively as "Ajinomoto."

[2] All undesignated section references are to the Civil Code.

2

trial court and in the previous appeal, that (1) Pine Valley's trade secrets had become generally known and therefore did not warrant protection, and (2) the royalty should be limited to two years, because under UTSA section 3426.2, subdivisions (a) and (b), an injunction must be limited to a time period that would "eliminate [the] commercial advantage that otherwise would be derived from the misappropriation." Ajinomoto argued that it would have taken only two years to independently develop a fried rice recipe, so the royalty provision could last no more than two years as a matter of law. Pine Valley opposed the motion and requested an award of attorney fees.

The trial court denied Ajinomoto's motion, holding that Ajinomoto had not demonstrated that Pine Valley's trade secrets had become generally known. The court did not directly address Ajinomoto's contentions about the duration of the royalty under section 3426.2. The court also denied Pine Valley's request for attorney fees.

Ajinomoto appealed. It challenges only the court's implied rejection of its argument about section 3426.2, arguing that as a matter of law the royalty must be dissolved because it cannot last longer than the one to two years it would have taken Ajinomoto to independently develop fried rice recipes. Pine Valley argues that Ajinomoto's contention is not appealable, because Ajinomoto asserted the same argument in the underlying litigation and the previous appeal. We agree with Pine Valley, and decline to address the substance of Ajinomoto's argument. Ajinomoto is not entitled to a second appeal on a legal issue that was previously decided.

Pine Valley cross-appealed the trial court's denial of its request for attorney fees under Code of Civil Procedure section

3

685.040. The trial court held that Pine Valley was not entitled to collect fees under this statute because opposing Ajinomoto's motion to modify the judgment did not constitute "enforcing" the judgment. We find that the court erred, and Pine Valley was entitled to seek attorney fees under Code of Civil Procedure section 685.040. We therefore reverse that portion of the court's order, and affirm the order in all other respects.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.  Complaint and trial**

The following factual summary is from this Division's opinion in *Pine Valley, Inc. v. Ajinomoto North America, Inc.* (Apr. 9, 2019, B282443 [nonpub. opn.]) (*Pine Valley*).

"Between 2001 and 2013, Pine Valley sold more than $50 million worth of its frozen fried rice products to Trader Joe's. Pine Valley had created the recipes for its products, but did not have facilities to produce food products in mass quantities. So, Pine Valley hired a co-packer, Granpac, to produce the products, for sale to Trader Joe's. Pine Valley necessarily disclosed its recipes to Granpac so it could make the products. Granpac orally agreed Pine Valley would have the exclusive right to sell the fried rice products to Trader Joe's.

"In 2002, Ajinomoto purchased Granpac. John Tolman, who had worked for Granpac as the Pine Valley account representative, began working for Ajinomoto after the acquisition. Tolman confirmed to Pine Valley that the business relationship would continue as it had under Granpac's ownership, i.e., that Pine Valley had an exclusive with Trader Joe's

4

for its fried rice products and no other products were to be sold to Trader Joe's directly without Pine Valley's knowledge and approval.

"A few years after the acquisition, Tolman left Ajinomoto and Pine Valley's relationship with Ajinomoto deteriorated. Pine Valley learned Ajinomoto had taken steps to try to sell competing frozen food products to Trader Joe's. Pine Valley considered changing to a different co-packer, but ultimately stayed with Ajinomoto because Pine Valley did not want to jeopardize the success of its products.

"Given its growing concerns, in 2011, Pine Valley had Ajinomoto U.S.A execute a confidentiality and non-disclosure agreement, which prohibited Ajinomoto U.S.A from disclosing confidential information including 'recipes' and 'business affairs (e.g., financial, marketing, product information).'

"In September 2012, using Pine Valley's recipes without permission, Ajinomoto prepared samples of competing chicken and vegetable fried rice products, hoping to sell them to Trader Joe's.  Over the next few months, Ajinomoto sent Trader Joe's several samples of revised chicken fried rice and vegetable fried rice (also based on Pine Valley's recipes).  In March 2013, Trader Joe's informed Pine Valley it was discontinuing Pine Valley's frozen fried rice line because Trader Joe's had found another vendor. Pine Valley later learned the other vendor was Ajinomoto.

"Ajinomoto also started selling fried rice derived from Pine Valley's recipes to other retailers, including Smart & Final, Sam's Club, Costco, Hy-Vee, and Shop Rite." (*Pine Valley, supra.*)

Pine Valley sued Ajinomoto for breach of contract, intentional interference with prospective economic advantage, fraud, violation of the UTSA, and misappropriation of confidential information. (*Pine Valley, supra.*) Pine Valley sought compensatory damages, statutory exemplary damages under the UTSA, punitive damages, injunctive relief, attorney fees, and costs. (*Ibid.*) In January 2016, a jury found in favor of Pine Valley on all five of its claims. (*Ibid.*) On Pine Valley's UTSA claim, the jury found that Ajinomoto willfully and maliciously misappropriated Pine Valley's trade secrets. The jury awarded Pine Valley compensatory damages of $1.4 million against each Ajinomoto subsidiary for a total of $2.8 million.

## B. Post-verdict imposition of royalty

Following trial, two issues remained to be decided by the court: the amount of any exemplary damages, and whether Pine Valley was entitled to an injunction. Pine Valley requested an injunction under section 3426.2, part of the UTSA, which states in full,

"(a) Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation. (b) If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use

6

upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

(c) In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order."

In a post-trial brief, Pine Valley argued that based on "the jury's finding of willful and malicious appropriation of trade secrets, [Pine Valley] is entitled to the full panoply of relief under the UTSA," including a permanent injunction barring Ajinomoto from using, exploiting, or profiting from Pine Valley's trade secrets. Pine Valley argued that Ajinomoto should be enjoined from selling rice products to Trader Joe's and three other retailers: Smart & Final, Shop Rite, and Hy-Vee.

Ajinomoto filed a brief opposing Pine Valley's request. It argued that an injunction would be inappropriate in part because Pine Valley "failed at trial to specifically describe its trade secrets" and "failed to make clear how the Trader Joe's Fried Rice Recipes were unique." Ajinomoto also argued that no royalty should be awarded because Pine Valley did not make efforts to protect its trade secrets during discovery or at trial. Ajinomoto further asserted that if "the Court finds the jury's damages award to [Pine Valley] to be inadequate (thereby justifying additional relief), the Court could assess a reasonable royalty to [Pine Valley] on all sales of the Trader Joe's Fried Rice Recipes in lieu of an injunction against Ajinomoto. This would be the more appropriate remedy . . . ."

In a ruling on August 10, 2016, the court held that an injunction was unwarranted, and "[c]onditioning future use upon the payment of a reasonable royalty is a more efficient and reasonable solution under the circumstances" of the case. The court stated that it lacked sufficient information to set the

7

royalty amount, asked the parties to meet and confer on the issue, and stated that the court would set the royalty amount if the parties could not agree.

In October 2016 the parties filed a written statement agreeing that a four percent royalty rate was reasonable. However, Ajinomoto also filed a brief arguing in part that Pine Valley "is not entitled to a reasonable royalty award." It asserted that the jury awarded Pine Valley past and future lost profits, "thereby obviating any possible justification for a royalty related to future sales."

Ajinomoto also asserted that if the court did impose a royalty, the royalty should be limited to two years. It relied on language in section 3426.2, subdivision (a), which states that an injunction may be limited to the time period necessary "to eliminate commercial advantage that otherwise would be derived from the misappropriation." Ajinomoto urged the court to adopt "the 'head start' rule to calculate the period that such commercial advantage presumably would be enjoyed by a competitor through its misappropriation of trade secrets." (See, e.g., *K-2 Ski Co. v. Head Ski Co., Inc.* (9th Cir. 1974) 506 F.2d 471, 474 [the "appropriate duration" for the injunction in that case was "the period of time it would have taken [the defendant], either by reverse engineering or by independent development, to develop its [product] legitimately without use of the [plaintiff's] trade secrets"].) Ajinomoto argued that it "would likely need no more than two years to independently develop [Pine Valley's] original fried rice recipes," and therefore the duration of any royalty should be "limited to one or two years." Ajinomoto referenced the deposition testimony of Koichi Kunishima, which was played at

8

trial, in which he stated that it took one to two years to develop a fried rice recipe for Wal-Mart.

Pine Valley filed a responding brief, asserting that the court had already determined that a royalty was warranted and Ajinomoto was not entitled to relitigate that issue. Pine Valley also argued that the royalty should be imposed "for the duration of time the misappropriation continues," because any lesser timeframe "would result in rewarding [Ajinomoto] for their willful and malicious trade secret misappropriation by allowing them to profit from the sale of" products based on Pine Valley's trade secrets.

On November 10, 2016, the trial court issued a written order noting that the court had already "found that a reasonable royalty to be paid by [Ajinomoto] to [Pine Valley for] the chicken and vegetable fried rice products is appropriate." The court acknowledged that the parties agreed on a four percent royalty. The court stated that at trial, Ajinomoto made "an attempt to convince the jury that [Ajinomoto] had not, in fact, misappropriated [Pine Valley's] recipes/trade secrets or, if they did, they are now selling a different product." The court stated that "the jury's verdict manifests a clear rejection of [Ajinomoto's] argument," and "[i]t is not appropriate for [Ajinomoto] to seek to revisit the jury's unequivocal and unambiguous verdict." The court also found no evidentiary support for Ajinomoto's argument that it could have independently developed its own rice recipe within one to two years, stating, "Rather, Kunishima testified that [Ajinomoto] developed a chicken fried rice recipe for Wal Mart four to five years ago . . . and have been selling it for three to four years." The court thus rejected the argument that the royalty's duration should be limited in time. The court ordered,

9

"[S]o long as [Ajinomoto] continue[s] to produce fried rice products consistent with the evidence adduced at trial . . ., [Ajinomoto is] ordered to continue to pay [Pine Valley] the agreed-upon royalty." The court asked Pine Valley to prepare a proposed judgment.

Pine Valley submitted a proposed judgment, which included the jury's findings, the jury's damages award, and "a reasonable royalty equal to four percent (4%) of [Ajinomoto's] gross sales of vegetable fried rice and chicken fried rice, for products sold by [Ajinomoto] beginning January 28, 2016 and continuing for so long as [Ajinomoto] sell[s] fried rice products which use [Pine Valley's] trade secrets, or products that are derived from [Pine Valley's] trade secrets." The royalties were to be paid on sales to Trader Joe's and other retailers. Ajinomoto could be "relieved from the obligations" of paying royalties "by proving to the Court's satisfaction that [Pine Valley's] trade secrets are no longer being used" in Ajinomoto's rice products.

Ajinomoto filed written objections to the proposed judgment, asserting again that Pine Valley "no longer has a trade secret because [it] failed to protect its trade secret during discovery and trial and thereby relinquished any entitlement to a reasonable royalty," and that the royalty "represents an unlawful double recovery because the jury already awarded [Pine Valley] $2.8 million in past and future lost profits." Ajinomoto also argued that "any reasonable royalty award must be limited in time," and to hold otherwise "violates Civil Code section 3426.2(b), which provides that a royalty should only extend for a period of time no longer than the time the use could have been enjoined, i.e., no longer than the time required to 'eliminate commercial advantage that otherwise would be derived from the

10

misappropriation.'" Ajinomoto also argued that Pine Valley was not entitled to attorney fees.

Pine Valley filed a response, asserting that the court should reject Ajinomoto's "third attempt to re-argue the imposition of the royalty." Pine Valley also asserted that Ajinomoto's position contradicted the jury's findings. Pine Valley stated that it would file a motion seeking attorney fees.

In February 2017, the trial court issued a written ruling overruling Ajinomoto's objections.[3] The court stated that Ajinomoto "once again impermissibly seek[s] to relitigate issues previously decided against them." Ajinomoto asserted that Pine Valley failed to protect its trade secrets, but that "is contradictory to the determination of the jury in this case." Ajinomoto also argued that the royalty should be limited in duration, but "the [proposed] judgment incorporates the precise language of the court's royalty determination from its November 10, 2016" ruling. The court therefore rejected Ajinomoto's "improper attempt to relitigate this matter in connection with an objection to a proposed judgment that is consistent with the prior rulings of the jury and the court in this matter, especially when this court has put so much time, energy, and analysis into these issues. . . . These issues have been briefed ad nauseum and the court does not appreciate [Ajinomoto] attempting, once again, to relitigate them." The court also held that it was appropriate for Pine Valley to seek attorney fees in a separate motion.

The court entered judgment in favor of Pine Valley on February 28, 2017. The judgment included the four percent

---

[3] The court sustained one of Ajinomoto's objections to the proposed judgment concerning an issue that is not relevant to this appeal.

royalty for rice products sold "beginning January 28, 2016 and continuing for so long as [Ajinomoto] sell fried rice products which use [Pine Valley's] trade secrets, or products that are derived from [Pine Valley's] trade secrets." The judgment included blank spaces for costs and attorney fees.

In March 2017, Ajinomoto filed a motion for judgment notwithstanding the verdict on Pine Valley's cause of action for misappropriation of trade secrets under the UTSA. Ajinomoto argued again that the evidence presented at trial was legally insufficient to establish that Pine Valley owned or maintained a trade secret, and therefore the evidence did not support the verdict. Ajinomoto further argued that because of the "legally insufficient trade secret misappropriation claim," there was insufficient evidence to support a royalty payment. The trial court denied Ajinomoto's motion, stating that Ajinomoto did not demonstrate that the verdict was not supported by substantial evidence.

Pine Valley moved for an award of attorney fees in April 2017. It asserted that it was entitled to fees under section 1717, which provides for attorney fees in an action based on contract, and section 3426.4, a UTSA provision that states in part that that when "willful and malicious misappropriation exists, the court may award reasonable attorney's fees and costs to the prevailing party." Pine Valley argued that it succeeded on its claim for breach of the parties' nondisclosure agreement, which included an attorney fees provision. Pine Valley further noted that the jury found willful and malicious appropriation of Pine Valley's trade secrets under the UTSA. Pine Valley discussed the hours its attorneys spent and their hourly rates, and requested a

12

2.0 multiplier due to the complexity of the case and the risk counsel took in litigating the case on contingency.

The trial court partially granted the motion in a written ruling.  The court found that Pine Valley was entitled to fees under sections 1717 and 3426.4.  The court reduced some of the fees requested and denied the lodestar multiplier.  In May 2017, the trial court amended the judgment to include an award of attorney fees of $777,074.70 and costs of $105,080.10.  Appeal

Pine Valley appealed the court's denial of punitive and statutory exemplary damages.  A different panel of this Division affirmed those rulings in April 2019 in *Pine Valley, supra.*

Ajinomoto cross-appealed, asserting that with respect to the UTSA claim, Pine Valley "failed to show that it made efforts to maintain the secrecy of its alleged trade secrets."  (*Pine Valley, supra*.)  This court rejected that argument, stating that substantial evidence supported the jury's finding that Pine Valley took reasonable efforts to maintain the secrecy of its recipes. (*Ibid*.)  The court also stated, "Pine Valley's disclosure of trade secrets in public court files . . . , without evidence that the secrets have become generally known, does not automatically destroy the secrecy of the trade secret."  (*Pine Valley, supra,* fn.7.)

Ajinomoto also addressed the royalty award on appeal.  In its combined respondent's brief and cross-appellant's opening brief, Ajinomoto dedicated six pages to challenging the royalty award on various grounds.  It argued in part, "Pine Valley's indefinite royalty award is also violative of Civil Code section 3426. Section 3426 provides that a royalty should only extend for a period no longer than the time the use could have been enjoined, i.e., no longer than the time required to 'eliminate commercial advantage that otherwise would be derived from the

13

misappropriation.' Therefore, Pine Valley's interminable royalty award constitutes an abuse of discretion and the royalty must be so stricken [*sic*]."[4]  Ajinomoto also asserted that the royalty constituted a double recovery and was speculative and extended into perpetuity. (*Pine Valley, supra*.)  The court rejected these arguments, stating that "by its terms" the royalty applied only as long as Ajinomoto continued to sell products that use or are derived from Pine Valley's trade secrets.  (*Ibid*.)  The court therefore affirmed the royalty award.  (*Ibid*.)

After remand, in October 2019 the trial court awarded Pine Valley $441,900.00 in attorney fees arising from the appeal. Post-appeal proceedings

In March 2020, Pine Valley moved for appointment of a receiver to determine whether Ajinomoto was using Pine Valley's trade secrets in rice products sold to additional grocery store chains.  Pine Valley asserted that it was entitled to royalties on those products.

Ajinomoto opposed the motion on multiple grounds. Relevant to this appeal, it argued again that under section 3426.2 and the "head-start" rule, the "duration of the royalty . . . should be limited to the time necessary for Ajinomoto to independently develop [Pine Valley's] trade secret – the original Trader Joe's recipes.  Trial testimony indicates that Ajinomoto generally required one to two years to develop a fried rice recipe."  The hearing on Pine Valley's motion for a receiver was continued multiple times.

---

[4]     This portion of Ajinomoto's brief cited only section 3426, the "short title" provision of UTSA.  The language quoted is in section 3426.2, subdivision (a).

Meanwhile, in September 2020 Ajinomoto filed a motion to modify the judgment "to dissolve subsection 'F' of the Judgment," the section awarding Pine Valley a royalty "for so long as [Ajinomoto] sell[s] fried rice products which use [Pine Valley's] trade secrets, or products that are derived from [Pine Valley's] trade secrets." Ajinomoto argued that Pine Valley failed to protect its trade secrets by publishing them during trial and in the appellate case, and therefore any trade secret protection was unwarranted. Ajinomoto also repeated its "head-start" argument, stating that "uncontroverted evidence submitted at trial" and "subsequent evidence" showed that Ajinomoto could have developed Pine Valley's recipe within two years. Ajinomoto referenced a declaration by Koichi Kunishima, vice president of research and development at Ajinomoto, who said that "Ajinomoto needs no more than two (2) years to independently develop any frozen fried rice product."[5] The motion stated that Kunishima's opinion echoed other evidence Ajinomoto presented at trial and with its post-trial briefing filed in 2016.

Pine Valley opposed Ajinomoto's motion, asserting that Ajinomoto raised the same argument multiple times in post-trial briefing and on appeal, and its argument had been rejected every time. Pine Valley argued that Ajinomoto's arguments were barred by the doctrines of res judicata, law of the case, and estoppel, as well as limits on the court's jurisdiction to alter a final judgment.

---

[5] The appellant's appendix does not include the Kunishima declaration with the motion; instead, it appears this declaration was filed with Ajinomoto's reply brief.

15

Pine Valley also asserted that it was entitled to attorney fees for enforcing the judgment under Code of Civil Procedure, section 685.040, relating to the enforcement of judgments.[6] Pine Valley further argued that it was entitled to fees "because Pine Valley prevailed on a breach of contract action where the contract gave rise to fees for a party successfully suing on the nondisclosure agreement," and under section 3426.4, based on the jury's findings on the UTSA cause of action.

Ajinomoto filed a reply in support of its motion. It also asserted that Pine Valley was not entitled to attorney fees because Pine Valley's opposition did not constitute "enforcing" the judgment. Ajinomoto further argued that Pine Valley and the court invited modification of the judgment if circumstances changed, and that Ajinomoto's arguments were made in good faith.

Ajinomoto also filed several declarations with its reply. Some of the declarations stated that the declarants were able to access certain trial court exhibits by searching for those documents on the court's public website, and these documents included Pine Valley's trade secrets. Ajinomoto also submitted the Kunishima declaration referenced in the motion.

Pine Valley objected to Ajinomoto's submission of additional evidence with its reply. Pine Valley noted that

---

[6] Code of Civil Procedure section 685.040 entitles a judgment creditor "to the reasonable and necessary costs of enforcing a judgment," including when collection of fees is "provided by law" or when "the underlying judgment includes an award of attorney's fees" pursuant to contract. (See also Code of Civil Procedure section 1033.5, subdivision (a)(10)(A); *Berti v. Santa Barbara Beach Properties* (2006) 145 Cal.App.4th 70, 77.)

16

Kunishima's deposition testimony had been played at trial, and the jury rejected his statements. Pine Valley submitted specific objections to each declaration, including lack of foundation, lack of personal knowledge, speculation, and legal conclusion stated as opinion.

Pine Valley also filed a supplemental memorandum, apparently at the request of the court. It stated that the trial exhibits Ajinomoto's declarants relied upon were created and introduced into evidence by Ajinomoto, not Pine Valley. It also stated that the declarants referenced documents relating to products made for Safeway, which was not at issue at trial and was not included in the royalty portion of the judgment. Pine Valley also reiterated some of its legal arguments.

The trial court issued a written order on May 20, 2022 denying Ajinomoto's motion to amend the judgment and granting Pine Valley's motion to appoint a receiver. The court partially overruled Pine Valley's objections to the declarations filed with Ajinomoto's reply. The court stated that based on the Court of Appeal's opinion in *Pine Valley*, "the law of the case requires that [Ajinomoto] present evidence that the Trade Secrets have become generally known and readily ascertainable, beyond these trade secrets having been disclosed in court filings." The court noted that although the declarants stated that they accessed the case file, it was clear that Ajinomoto's counsel "directly pointed to the trial exhibits" it wanted the declarants to see. The court stated, "This Court does not believe the Court of Appeal intended that a trade secret become generally known from a public court filing when an adversary in the litigation leads a third-party or competitor directly to the Trade Secret contained in those court files. A Trade Secret loses its protected status when it is readily

17

accessible and becomes public knowledge and the Court does not believe [Ajinomoto] established this . . . ." The court also noted that the declarants relied on documents pertaining to a product made for Safeway, which was irrelevant. The court concluded that Ajinomoto "failed to offer admissible evidence showing that [Pine Valley's] Trade Secret[s] are generally known."

The court then turned to Pine Valley's request for attorney fees. It cited Code of Civil Procedure section 685.040, and stated, "The Court finds that [Pine Valley] may not recover attorney's fees as the costs incurred did not relate to 'enforcing a judgment.' In the instant Motion, [Ajinomoto does] not seek to stop making the royalty payments ordered in the Judgment. Instead, [Ajinomoto] seek[s] to determine whether the Trade Secrets ceased to exist based upon [Pine Valley's] conduct, which would then relieve [Ajinomoto] of [its] duty to continue to pay the royalty. Accordingly, [Pine Valley] has failed to show that it is entitled to attorney's fees because its Opposition to the Motion is 'enforcing a judgment.'" The court therefore denied Pine Valley's request.

Ajinomoto timely appealed the court's ruling denying its motion to modify the judgment. Pine Valley timely cross-appealed the court's denial of its attorney fee request.

## DISCUSSION

### A. Ajinomoto's appeal of the denial of its motion to modify the judgment

Ajinomoto does not challenge the trial court's findings as to whether the trade secrets have become generally known. It argues instead that the "trial court erred by failing to terminate the royalty on the ground that the head-start period was over." It relies on section 3426.2, subdivisions (a) and (b), and argues that

18

the "law is well-settled" regarding the head-start period under the UTSA and similar laws in other jurisdictions.  It asks this court to "make clear (1) that royalty payments are limited to the head-start period, (2) that the length of the head-start period must be determined, and (3) that the head-start period has already lapsed as a matter of law, or, alternatively, that on remand Ajinomoto may renew its motion with additional evidence of what the head-start period is in this case."[7] Anticipating some of Pine Valley's arguments in opposition, Ajinomoto also asserts that no procedural bar prevented it from asserting its head-start argument in a motion to amend the judgment.

We begin by addressing Pine Valley's argument that the trial court's order is not appealable.  The existence of an appealable judgment or order "is a jurisdictional prerequisite to an appeal."  (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.) Ajinomoto's appeal does not meet this requirement.

An appeal may be taken from "an order made after" an appealable judgment.  (Code Civ. Proc., § 904.1, subd. (a)(2).) This is the statutory basis upon which Ajinomoto relies. However, "[d]espite the inclusive language of Code of Civil Procedure section 904.1, subdivision [(a)(2)], not every postjudgment order that follows a final appealable judgment is appealable."  (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651 (*Lakin*).)  To be appealable, "the issues raised by

---

[7]     Ajinomoto notes that the trial court "implicitly found Kunishima not credible" regarding the development of independent rice recipes, and asks "that the Court make clear that Ajinomoto is allowed on remand to offer additional evidence to show the length of the head-start period."

the appeal from the order must be different from those arising from an appeal from the judgment." (*Ibid.*)

"An order denying a motion to vacate an appealable judgment is generally not appealable if such appeal raises only matters that could be reviewed on appeal from the judgment itself." (*Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351, 358.) "This restriction is imposed to prevent both circumvention of time limits for appealing and duplicative appeals from essentially the same ruling." (*Malatka v. Helm* (2010) 188 Cal.App.4th 1074, 1082 (*Malatka*); see also *Rooney, supra*, at p. 358.)

Pine Valley asserts that the trial court's order is not appealable because Ajinomoto challenges the order only on grounds that have already been argued and decided. Pine Valley points out that "Ajinomoto's sole basis for 'modifying' the royalty's duration" is the same argument that Ajinomoto asserted in its briefing about the royalty in 2016, in its objections to the proposed judgment in 2016, and in the *Pine Valley* appeal. Pine Valley notes that Ajinomoto relied on the same evidence—Kunishima's testimony that it takes one to two years to develop a rice recipe—and relied on the same language in section 3426.2 as the legal basis for its argument.

Pine Valley is correct. In Ajinomoto's 2016 briefing about the royalty, it relied on section 3426.2 and urged the court to adopt "the 'head start' rule to calculate the period that such commercial advantage presumably would be enjoyed by a competitor through its misappropriation of trade secrets," which Ajinomoto said could be no more than two years, relying on Kunishima's testimony about developing recipes. In its objections to the proposed judgment, Ajinomoto argued that "any

20

reasonable royalty award must be limited in time" or it would violate section 3426.2. In its respondent's brief and cross-appellant's opening brief in *Pine Valley, supra*, Ajinomoto asserted again that the royalty should be limited to a period "no longer than the time required to 'eliminate commercial advantage that otherwise would be derived from the misappropriation.'"

This is exactly the same argument Ajinomoto makes in this appeal: Ajinomoto asks this court to determine whether the royalty period must be limited in duration as a matter of law based on the language of section 3426.2. Ajinomoto therefore has not presented an issue that is "different from those arising from an appeal from the judgment." (*Lakin, supra*, 6 Cal.4th at p. 651.)

Ajinomoto responds that this appeal "does raise issues that are different from an appeal from the underlying judgment, including (1) whether, as a matter of law, the head-start period is at most six years,[8] (2) whether Code of Civil Procedure section 533 and Civil Code section 3426.2 permit motions to modify a royalty injunction based on developments since entry of the judgment imposing the royalty; and (3) whether res judicata, collateral estoppel, law of the case, or any other such doctrines precluded Ajinomoto from moving to modify the royalty based on a 'head start' or 'generally known' basis."

We are not persuaded. First, Ajinomoto has presented no relevant "developments since entry of the judgment imposing the royalty." The only arguable basis for changed circumstances was the public availability of Pine Valley's trade secrets; the trial

---

8       This time period is based on the time between the entry of judgment and the date the court ruled on Ajinomoto's motion to modify the judgment.

21

court rejected Ajinomoto's contentions on that issue and Ajinomoto does not challenge that ruling on appeal. Thus, there is no issue before us pertaining to new factual developments. Second, although Ajinomoto included in its briefing procedural arguments relating to law of the case and res judicata, it did so only in anticipation of Pine Valley's arguments; Ajinomoto does not appeal any trial court ruling on those grounds. Rather, Ajinomoto challenges only the duration of the royalty on the basis of section 3426.2, which was argued and addressed in the initial litigation and in the previous appeal.

Ajinomoto asserts that in the alternative, the order is appealable by statute as "an order . . . refusing to grant or dissolve an injunction." (Code Civ. Proc., § 904.1, subd. (a)(6).) It points to section 3426.2, subdivision (b), which states that "an injunction may condition future use upon payment of a reasonable royalty." Ajinomoto asserts that the royalty in the judgment therefore is "part of an injunction," so it is appealable under Code of Civil Procedure section 904.1, subdivision (a)(6).

Assuming for the sake of argument that a judgment including a royalty may be deemed an "injunction" as opposed to a monetary remedy,[9] the issue is not reviewable. Even in an appeal regarding an injunction or similar order a court will not review issues that were addressed or could have been addressed

---

[9] See, e.g., *Ajaxo, Inc. v. E\*Trade Financial Corporation* (2020) 48 Cal.App.5th 129, 160, stating that a "reasonable royalty, as a monetary remedy under section 3426.3, subdivision (b), is simply 'a court-determined fee imposed upon a defendant for his or her use of a misappropriated trade secret.'" Section 3426.3, subdivision (b) is a UTSA provision addressing royalties in cases where "neither damages nor unjust enrichment caused by misappropriation are provable."

in an earlier appeal.  In *Chico Feminist Women's Health Center v. Scully* (1989) 208 Cal.App.3d 230 (*Scully*), for example, the defendants challenged the modification of an injunction, but also challenged parts of the injunction that had not been modified. The Court of Appeal rejected the latter argument, stating that there was "no reason" why the defendants could "use the order of April 25, amending the injunction, as an artificial springboard from which to launch an appeal that could have been taken earlier." (*Scully, supra*, 208 Cal.App.3d at p. 251.)  The court noted that in an "analogous context," an appeal may not be taken from a motion to set aside a judgment when it "'raises only matters that could be reviewed on appeal from the judgment itself.'" (*Id*. at p. 252.)  The court continued, "The general rule controls here. To allow defendants to challenge the subject paragraphs of the earlier preliminary injunction would allow them two appeals on identical grounds."  (*Ibid*.)

The Court of Appeal relied on *Scully* in *Malatka, supra,* 188 Cal.App.4th 1074.  In that case, the trial court entered a restraining order, the defendant moved to modify or dissolve it, and the trial court amended the order but denied the motion to dissolve.  The defendant appealed, and the plaintiff moved to dismiss the appeal as from a nonappealable order.  The appellate court noted that "[i]n response to plaintiff's motion to dismiss, defendant simply asserts that an order refusing to dissolve an injunction is appealable by statute." (*Id*. at p. 1084.)  The court rejected this argument, stating, "[T]o the extent the current appeal from an order implicitly refusing to dissolve a restraining order presents issues that could have been raised in an appeal from the original restraining order, those issues are not reviewable in this appeal." (*Ibid*.)  The court held that issues

were only reviewable "to the extent the motion to dissolve was dependent on new facts and law." (*Ibid*.)

These cases comply with the general view that "'[a] postjudgment order cannot be appealed on issues that could have been reviewed on appeal from the prior judgment; a new *issue* must be raised. . . . Otherwise, the parties would effectively be allowed two appeals from the same ruling.'" (*Gassner v. Stasa* (2018) 30 Cal.App.5th 346, 356 [emphasis in original]; see also *Malatka, supra,* 188 Cal.App.4th at p. 1082 ["on an appeal from an appealable ruling, an appellate court will not review earlier appealable rulings"]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, ¶ 2:152.) Here, because Ajinomoto asserts the same argument it made in its 2016 briefing in the trial court and in its appellate briefing in *Pine Valley, supra*, without presenting evidence of changed circumstances or changed law on the issue, its contentions are not appealable and not reviewable.

We therefore do not address the substance of Ajinomoto's contentions about the duration of the royalty based on section 3426.2 and the head-start rule. We also do not address Pine Valley's substantive arguments on the issue, or its assertions that Ajinomoto's contentions are barred by law of the case, claim preclusion, issue preclusion, or forfeiture.

Ajinomoto also asks this court to provide guidance regarding a future motion. Ajinomoto acknowledges that the trial court rejected its evidence and states that it "does not challenge those findings on appeal," but asks this court to "make clear that Ajinomoto is entitled to renew its motion in the trial court and provide additional guidance on the type of evidence necessary to show that the trade secrets have become generally known."

24

We decline to do so. As Pine Valley correctly asserts, this is an improper request for an advisory opinion on an issue that has not been presented for decision. We do not issue advisory opinions about what parties or the trial court might do on hypothetical future facts. (See, e.g., *Make UC a Good Neighbor v. Regents of University of California* (2024) 16 Cal.5th 43, 65 [courts "do not render advisory opinions" on issues not before them]; *Neary v. Regents of University of California* (1992) 3 Cal.4th 273, 284 ["The well-established rule is that we should avoid advisory opinions"]; *Younger v. Superior Court* (1978) 21 Cal.3d 102, 119-120 ["'The rendering of advisory opinions falls within neither the functions not the jurisdiction of this court'"].)

## B. Pine Valley's cross-appeal of the order denying attorney fees

Pine Valley asserts in its cross-appeal that the trial court erred in holding that Pine Valley was not entitled to recover attorney fees incurred in opposing Ajinomoto's motion to modify the judgment. It argues that it was entitled to seek attorney fees under Code of Civil Procedure section 685.040. "The usual standard of review for an award of attorney fees is abuse of discretion," but where, as here, the question presented is "whether the trial court had the authority pursuant to [Code of Civil Procedure s]ection 685.040" to award attorney fees, it is "a legal issue, which we review de novo." (*Jaffe v. Pacelli* (2008) 165 Cal.App.4th 927, 934 (*Jaffe*).)

Code of Civil Procedure section 685.040 states that a "judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment" when such fees are "provided by law," or "if the underlying judgment includes an award of attorney's fees to the judgment creditor" pursuant to contract.

25

The trial court denied Pine Valley's request for fees on the grounds that by opposing Ajinomoto's motion to modify the judgment, Pine Valley was not "enforcing" the judgment.  The trial court erred.

The Supreme Court has observed that California "statutes and rules distinctly address three different types of costs and fees: *prejudgment* costs, including attorney fees where authorized by contract, statute or law . . . ; *appellate* costs and fees . . . ; and postjudgment *enforcement* costs and fees . . . recovered under the Enforcement of Judgments Law, specifically [Code of Civil Procedure] sections 685.040 to 685.095." (*Conservatorship of McQueen* (2014) 59 Cal.4th 602, 608 (*McQueen*).)  "[W]hen a fee-shifting statute provides the substantive authority for an award of attorney fees, any such fees incurred in enforcement of the judgment are within the scope of [Code of Civil Procedure] section 685.040." (*Id*. at p. 614.)

The Enforcement of Judgments Law does not define "enforcement." (*McQueen, supra*, 59 Cal.4th at p. 609.)  In *McQueen*, the Supreme Court held that "enforcement" does not include a direct appeal, which falls into the second category of costs listed above (*id*. at p. 612), but otherwise, "enforcement" in the statute should be interpreted broadly.  There, the plaintiff incurred fees in prosecuting a separate fraudulent transfer action "in an effort to maintain assets in defendant's hands for potential satisfaction of the judgment in *this* case." (*Id*. at pp. 612-613.) The court held that these fees "came within the scope of what could be claimed . . . under [Code of Civil Procedure] section 685.040," even though the fees were incurred in a separate proceeding. (*Ibid*.)

*McQueen* cited with approval *Jaffe, supra,* 165 Cal.App.4th 927, in which the judgment debtor, Pacelli, attempted to discharge her debt in a bankruptcy proceeding.  The judgment creditor, Jaffe, successfully petitioned the bankruptcy court to find that Pacelli was not entitled to have the debt discharged. (*Jaffe, supra*, 65 Cal.App.4th at pp. 931-932.)  The trial court denied Jaffe's request for attorney fees under Code of Civil Procedure section 685.040 because the fees were incurred in a different proceeding.

The Court of Appeal reversed, holding that "Jaffe's efforts taken in the bankruptcy court, and in related proceedings, were incurred to enforce the superior court judgment.  Thus, Code of Civil Procedure section 685.040 . . . entitles Jaffe to a postjudgment order awarding him compensation for the attorney fees and costs expended in those proceedings." (*Jaffe, supra*, 65 Cal.App.4th at pp. 929-930.)  The court reasoned that "the entire purpose of Pacelli's bankruptcy filing, and her related appeals, was to avoid paying the judgment Jaffe sought to enforce.  Pacelli sought to sabotage Jaffe's collection efforts. . . .  Had Pacelli been successful in the bankruptcy proceedings, the judgment in the superior court would have been extinguished and made unenforceable by the bankruptcy court's discharge order. . . . Jaffe's preventive measures were directly related to the continued enforceability of the superior court's judgment. . . ." (*Id*. at p. 938.)  Thus, "Jaffe protected the judgment. Jaffe's actions in the bankruptcy proceedings are enforcement proceedings pursuant to [Code of Civil Procedure s]ection 685.040." (*Ibid*.)

*McQueen* also cited with approval *Globalist Internet Technologies, Inc. v. Reda* (2008) 167 Cal.App.4th 1267

(*Globalist*), in which "Globalist incurred attorney fees in enforcing the judgment by defending the judgment from attack against its enforcement in [a] companion case." (167 Cal.App.4th at p. 1274.) The Court of Appeal stated that the "plain meaning" of Code of Civil Procedure section 685.040 "necessarily suggests 'enforcing a judgment' would include defending the validity of the judgment against challenge in a separately filed attack." (*Globalist, supra*, 167 Cal.App.4th at p. 1274.) The court stated that the "sole purpose of the specific performance action filed by [the judgment debtors] was to significantly decrease their unsatisfied judgment debtor obligations in this action. . . . Had Globalist not defended against the specific performance action, it would have lost substantial rights under the judgment in this case. Accordingly, the attorney fees it incurred in defense of the companion action were incurred in enforcing the judgment." (*Id.* at p. 1276.)

Here, similarly, Pine Valley defended the validity of the judgment against Ajinomoto's attack, lest it lose substantial rights to the royalty awarded in the 2017 judgment. Ajinomoto's motion to modify the judgment explicitly sought to "dissolve subsection 'F' of the Judgment," the royalty provision. Had Pine Valley not defended the judgment by opposing Ajinomoto's motion, its entitlement to royalties could have been reduced or eliminated. If a judgment creditor is entitled to collect postjudgment attorney fees under Code of Civil Procedure section 685.040 for defending its judgment from attack in a *separate* proceeding, as in *Jaffe* and *Globalist*, it stands to reason that a judgment creditor is entitled to seek such fees when the judgment is attacked in the *same* proceeding in a postjudgment motion to modify. Here, as in *Jaffe* and *Globalist*, Pine Valley's fees were

28

incurred in responding to efforts by the judgment debtor to significantly decrease what the judgment creditor could collect on the judgment.[10]

Ajinomoto argues that "enforcing" in Code of Civil Procedure section 685.040 should be read narrowly to encompass only the specific means of enforcement enumerated in the Enforcement of Judgments Law, and asserts that Pine Valley's actions did not meet these definitions. Ajinomoto cites *McQueen* in support of this argument. *McQueen* did note that the Enforcement of Judgments Law "addresses in detail several means of enforcing a judgment." (*McQueen, supra*, 59 Cal.4th at p. 609.) Under the reasoning of *McQueen*, *Jaffe*, and *Globalist*, however, Code of Civil Procedure section 685.040 is broad enough to encompass fees incurred in a variety of contexts intended to preserve the collectability of a judgment. These cases do not support Ajinomoto's argument.[11]

---

[10] Pine Valley also points out that many cases award fees arising from postjudgment proceedings when those fees are authorized by statute, without reference to Code of Civil Procedure section 685.040. (See, e.g., *Crespin v. Shewry* (2004) 125 Cal.App.4th 259, 263 [allowing for fees under Code of Civil Procedure section 1021.5 relating to postjudgment litigation]; *Grossmont Union High School Dist. v. Diego Plus Education Corp.* (2023) 98 Cal.App.5th 552, 576 [same]; *George v. Shams-Shirazi* (2020) 45 Cal.App.5th 134, 141 [allowing postjudgment attorney fees as sanctions].) Because we find that Pine Valley was entitled to seek fees under Code of Civil Procedure section 685.040, we do not address this alternate argument.

[11] Ajinomoto also argues that Pine Valley only argued below that it was entitled to fees for "enforcing" its judgment, not for

29

Ajinomoto also contends it "was not attacking the judgment; it was attempting to establish that changed circumstances entitled it to be 'relieved' of the royalty *just as the judgment contemplated would happen someday*." (Emphasis in original.) This argument is meritless. The judgment stated that Ajinomoto "may be relieved from the obligations" relating to the royalty "by proving to the Court's satisfaction" that Pine Valley's trade secrets "are no longer being used" in Ajinomoto's products. Despite insisting that creating unique fried rice recipes takes only one to two years, Ajinomoto has never made an effort to show that it is no longer using Pine Valley's trade secrets. It is a misrepresentation of the record to assert that the court "contemplated" that Ajinomoto could be "relieved" of its royalty obligations in the future by repeating arguments that were rejected by the jury, the trial court, and the appellate court.

Thus, Pine Valley was entitled to seek attorney fees under Code of Civil Procedure section 685.040. Our holding is limited only to Pine Valley's entitlement to seek attorney fees as a matter of law under the statute; any actual award of fees rests within the discretion of the trial court.

## DISPOSITION

The trial court's May 20, 2022 order is reversed to the extent that it denies Pine Valley's entitlement to seek attorney

---

"defending" its judgment, and therefore all arguments relating to "defending" the judgment have been forfeited for failure to raise them below. We are unpersuaded. Pine Valley's assertion that it was entitled to fees under Code of Civil Procedure section 685.040 was sufficient to preserve its legal argument about what actions fall within the scope of the statute.

fees.  In all other respects, the order is affirmed.  Pine Valley is entitled to its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, ACTING P. J.

We concur:


MORI, J.


DAUM, J.*

---

*     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.